1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TREANDOUS A. COTTON,

11          Plaintiff,                    No. CIV S-06-1107 GEB DAD P

12      vs.

13   D.L. RUNNELS, et al.,                FINDINGS AND RECOMMENDATIONS

14          Defendants.

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Before the court is a motion to dismiss brought on behalf of defendants

18   Anthony, Salenger, and Sloss-Peck.[1]  The moving defendants contend that this action must be

19   dismissed due to plaintiff's failure to exhaust his administrative remedies prior to bringing suit

20   against them.

21   /////

22

23          [1] Defendants Dr. Salenger, Correctional Officer Anthony and Correctional Officer
     Sloss-Peck are the remaining defendants in this action.  Defendant Sloss-Peck was referred to in
24   plaintiff's complaint as Officer Peck.  Defendants Appeals Coordinator Jackson and Officer
     Guzman were originally named but on March 20, 2008, their motion to dismiss for failure to
25   state a cognizable claim was granted.  Defendant Dr. Fleischman was dismissed on January 23,
     2008, after plaintiff failed to provide an address for purposes of service of process.  Defendant
26   Warden Runnels was never served pursuant to the court's March 19, 2007 order.

1

Plaintiff alleges that in between January 26, 2004 and February 2, 2004, he was confined at the Correctional Treatment Center at High Desert State Prison, and that defendant Dr. Salenger and former defendant Dr. Fleischman prescribed Prozac and Risperdal to treat his mental condition. (Compl.[2] at 4.) Before being discharged from the Treatment Center on February 2, 2004, plaintiff allegedly informed defendant Dr. Salenger that he was still suicidal and hearing voices. (Id.) Plaintiff alleges that he was nonetheless discharged and given his personal property along with two bottles of Prozac and Risperdal. (Id. at 5.) Plaintiff contends that it was improper to provide him with that amount of these controlled substances in this fashion. (Id.) Defendant Sloss-Peck was allegedly present when plaintiff received his property and plaintiff claims that both defendants Sloss-Peck and Anthony were aware that he was given the bottles of medications upon his discharge. (Id.) Plaintiff alleges that he later overdosed on the medications. (Id.)

Plaintiff claims that defendants Anthony and Sloss-Peck failed to intervene to prevent him from overdoing on the medications that were improperly provided to him in this fashion. (Id. at 8.) Plaintiff also alleges that defendant Dr. Salenger was deliberately indifferent to plaintiff's risk for suicide when he had plaintiff released, rather than placing him on suicide observation. (Id. at 9.) Although plaintiff claims that his rights under the Fourteenth Amendment were violated, the court has determined that a claim alleging failure to prevent an attempted suicide is based on plaintiff's Eighth Amendment right to receive adequate medical care. See Findings and Recommendations, filed Feb. 19, 2008, at 6; Order, filed Mar. 7, 2008.

Plaintiff also contends that on February 12, 2004, he sent a grievance form to Appeals Coordinator Jackson in which he complained about the people involved in giving him

---

[2] Plaintiff's complaint consists of a form complaint with the first page, numbered "3," several supplements which are not numerically numbered and additional exhibits. Because the pages are not numerically numbered, the court herein will refer to the page numbers from the court's electronic filing system.

the psychiatric medications in this fashion.  (Id. at 5.)  Plaintiff's grievance described the matter about which he was complaining as follows:

> On 2-?-04, appealant [sic] was provided by (2) escorting officers that resulted to overdose controlled drugs.  [sic]  Appealant [sic] suggests that these officers took advantage of appealants [sic] mental status & tried with deliberate intent to murder appealant [sic] for these officers had no such license/not trained to provide controlled drugs.

(Id. at 15.)  In the part of the grievance form asking what action he was requesting, plaintiff responded:

> (1) to have . . . (illegible) investigation by warden and/or Internal Affairs office (2) To be compensated and have criminal charges filed.  Not be subjected to any forms of harassment.

(Id.)

When plaintiff did not receive a reply to his grievance, he sent appeals coordinator Jackson a letter dated March 1, 2004, inquiring about the status of his grievance.  (Id. at 5.) Plaintiff also made other attempts to have his grievance processed.  (Id. at 5-6.)

## PARTIES' ARGUMENTS

I.  Defendants' Motion to Dismiss

Defendants argue that plaintiff failed to exhaust administrative remedies because there is no record that he filed an appeal in February 2004 concerning his discharge from the Treatment Center.  (Mot. to Dismiss (MTD) at 3.)  In this regard defendants have provided a declaration by M. Dangler, the current Appeals Coordinator at High Desert State Prison.  (Id., Ex. A.)  Dangler represents that his duties include maintaining records of all logged appeals filed by prison inmates at High Desert State Prison and also a "database of all appeals that have been screened out for failure to comply with proper procedures."  (Id., Ex. A at 1.)   He declares as follows:

> At the request of the Office of the Attorney General, I have conducted a thorough search of our records at HDSP to determine if inmate Treandous Cotton (T-97805) had filed an inmate appeal concerning his release from the Correctional Treatment Center on February 2, 2004, alleging that he should not have been discharged,

or that the escorting correctional officers gave him anti-psychotic medications.

Our records reflect that inmate Treandous Cotton (T-97805) at HDSP, filed no administrative appeals in February 2004. The records also reflect that he has never filed an administrative appeal related to his discharge from the Correctional Treatment Center on February 2, 2004.

(Id., Ex. A at 1-2.)

Defendants argue that there is no evidence that plaintiff exhausted his administrative remedies prior to filing suit as required. (MTD at 6.) Defendants argue that the appeal form plaintiff attached to his complaint does not indicate that it was submitted to prison officials, and that if it had been submitted, it would have been logged by the Appeal's Office. (Id.) In addition, if the court finds that the appeal form attached to the complaint constitutes exhaustion of administrative remedies, defendants argue that exhaustion should extend only to claims brought in this action against defendant Sloss-Peck. (Id.) Defendants argue that the appeal form attached to the complaint did not provide notice to defendant Dr. Salenger, who plaintiff now alleges was deliberately indifferent to plaintiff's need for treatment, that plaintiff was complaining about any action he took or failed to take. (Id.) Defense counsel also argues that the administrative appeal attached to the complaint provided no notice to defendant Anthony that plaintiff was complaining about anything he did or failed to do. (Id. at 7.)

II. Plaintiff's Opposition

Plaintiff contends that through his inmate appeal, dated February 12, 2004, he properly exhausted his administrative remedies. (Opp'n at 2.) Plaintiff argues that his February 22 appeal was "never addressed" but that he made several attempts to inform officials about his grievance. (Id.) In this regard, plaintiff submits a letter that he claims to have sent to appeals coordinator Jackson, dated March 1, 2004, stating:

The reason I'm sending you this correspondence is for the purpose of finding out the status of a 602 that I sent to you via institutional mail dated 2/12/04. I understand that according to the rules,

> regulations of the Title 15 certain time constraints must be met, which is not with my 602 dated 2/12/04. Please let me know the status, so I can if dissatisfied proceed to the next available level if necessary. Thank you for your time regarding this matter.

(Id. at 63.) In support of his contention that he attempted to exhaust his administrative remedies, plaintiff also has submitted to the court copies of the following appeals and correspondence.

### A. May 23, 2004 Citizen's Complaint

Plaintiff indicates on this form that he is proceeding with a citizen's complaint for misconduct which has a one year filing period. (Id. at 28.) In the form plaintiff contends that two escort officers gave him two bottles of prescription medication which were used by plaintiff in an attempted suicide. (Id.) There is a notation on the form that the grievance was filed outside the 15-day deadline. (Id.) A screening form, dated May 25, 2004, appears to indicate that this administrative appeal was rejected by prison officials as being a duplicate of plaintiff's grievance log number 04-00888, and for being filed outside the 15-day time limit. (Id. at 27.)

### B. October 18, 2004 Citizen's Complaint

On this form dated October 18, 2004, plaintiff indicated that he was making a "Citizen's complaint pursuant to the California Penal Code Section 832.5" about "prison officials has [sic] corruptly conspired to deny appellant adequate mental health treatment and reasonable suicide prevention." (Id. at 35.) Therein plaintiff contends that the actions of defendant Dr. Salenger and others show "deliberate [sic] indifference and negligence towards appellant's serious mental health needs" because they have "failed to implement an adequate and reasonable suicide prevention plan for appellant." (Id. at 35-36.) In the form plaintiff discusses his February 2, 2005 attempted suicide, alleged staff misconduct in failing to file his previous citizen's complaint and the alleged coverup of the complained of misconduct. (Id. at 36.) Plaintiff appears to have sent this citizen's complaint to N. Grannis, Chief of Inmate Appeals Branch, with a letter dated November 4, 2004. (Id. at 34.)

/////

1     C.  December 7, 2004 Citizen's Complaint

2         Plaintiff contends that on December 7, 2004, he submitted an inmate grievance

3 form to appeals coordinator Jackson.  (Id. at 14.)  Therein, plaintiff made the following

4 allegations:

5         This is a Citizen's complaint Pursuant [sic] to the California Penal
        Code Section 832.5.  Appellant Cotton is appealing the fact that,
6         High Desert State Prison, prison officials has corruptly conspired
        to deny appellant adequate mental health treatment and reasonable
7         suicide prevention.  Dr. Salenger and other mentally unstable
        supervisor's [sic] and other administrators are with deliberate
8         indifference and negligence towards appellant's serious mental
        health needs.  Prior to February 2, 2004, Dr. Salenger and other
9         Correctional Officers have deliberately failed to implement an
        adequate and reasonable suicide prevention plan for appellant . . . .

10

11 (Id. at 15, 17.)  Plaintiff also provided additional information about his attempted suicide in this

12 form.  (Id. at 17.)

13     D.  December 22, 2004 Citizen's Complaint

14         The same allegations that were set forth in plaintiff's October 18 citizen's

15 complaint were submitted again in this complaint which was sent to the Director of the

16 Department of Corrections.  (Id. at 39-40.)  The appeals form was stamped received by the

17 Inmate Appeals Branch on December 27, 2004.  (Id. at 40.)  In a letter dated January 26, 2005, N.

18 Grannis, Chief of the Inmate Appeals Branch, indicates that the documents are being returned to

19 plaintiff because the form must be completed through the second level of review.  (Id. at 38.)

20     E.  Other Inmate Grievances and Complaints

21         Plaintiff has also submitted to the court other inmate appeal forms, decisions and

22 correspondence that appear unrelated to the incident at issue in this case.  It would appear that

23 plaintiff has filed numerous other grievances and complaints.

24         On December 22, 2003, plaintiff submitted a grievance (log no. 04-00285)

25 concerning psychiatrist Mr. Exom who allegedly took plaintiff off medication that plaintiff feels

26 helped with his stress and depression.  (Id. at 45)

On April 6, 2004, plaintiff submitted a grievance (log no. 04-888) concerning officers Anthony and Rush who plaintiff alleges were trying to make plaintiff fall down stairs and bump into things during escort. (Id. at 50-51.) This grievance resulted in a partial grant at the first level of review on May 11, 2004, and a partial grant at the second level of review on May 26, 2004. (Id. at 52-55.)

Plaintiff also has submitted to the court an inmate request form, dated May 24, 2008, directed to Dr. Williams which inquired if "the 602 and inmate request forms I gave you to turn in 5-5-04 was submitted to the proper people." (Id. at 65.) It was not clear from plaintiff's attachments what problem plaintiff was attempting to raise in those inmate grievances.

On May 28, 2004, plaintiff allegedly gave correctional officer Guzman two inmate appeal forms which were attached to "Rights and Responsibility Statement" with respect to plaintiff's citizen complaints. (Id. at 61, 56-59.) As best as the court can determine, the documents provided to officer Guzman concerned plaintiff's inmate appeal, log number 04-888 (Doc. No. 72 at 51-52), containing allegations that officers Anthony and Rush were trying to make plaintiff fall down the stairs and bump into things. (See id. at 51-52, 56-59.)

Lastly, plaintiff has submitted to the court the following: Memoranda from Warden Runnels, dated August 4, 2004 and September 14, 2004, in response to letters plaintiff sent to the Regional Administrator-North concerning numerous matters (id. at 67-68); letters from the Office of the Inspector General (id. at 69-71); letter from the ACLU (id. at 72), and letter from the Prison Law Office (id. at 73).

III. Defendants' Reply

Defendants again argue that plaintiff's inmate appeal, dated February 12, 2004, was never received by prison officials and that his administrative remedies are therefore unexhausted. (Reply at 2.) As for the numerous exhibits filed with plaintiff's opposition, defendants argue that those appeals were unexhausted, untimely, irrelevant, or show plaintiff's attempts to bypass the review process. (Id. at 3-5.)

By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The U.S. Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. Id. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. Woodford v. Ngo, 548 U.S. 81, 90-93 (2006).

In California, prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most appeals progress from an informal review through three formal levels of review. See Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal level, also referred to as the director's level, is not appealable and will conclude a prisoner's administrative remedy. Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available before filing suit. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion. See

Jones v. Bock, 549 U.S.199, 216 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003). The defendants bear the burden of raising and proving the absence of exhaustion. Wyatt , 315 F.3d at 1119. "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust–a procedure closely analogous to summary judgment–then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record." Id. at 1120 n.14. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120. See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied 549 U.S. 1204 (2007). On the other hand, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

I. The Evidence and Burden of Proof

Plaintiff contends that on February 12, 2004, he submitted an inmate grievance relating to his attempted suicide, and that on March 1, 2004, he sent a letter to the appeals coordinator inquiring as to the status of that grievance. Plaintiff has provided the court with copies of these documents. Defendants' sole contention is that the current appeals coordinator, M. Dangler, conducted a search of the records and database at the prison and concluded that there is no record that plaintiff ever submitted a prison grievance in February of 2004.

The court finds that defendants have failed to carry their burden of proving that plaintiff failed to exhaust his administrative remedies prior to filing this action. First, the declaration of M. Dangler relied upon by defendants in making this argument is not persuasive. He was not the appeals coordinator in 2004 when plaintiff attempted to file his administrative appeals, he provides no details concerning the record-keeping or tracking system for grievances in place at the institution in 2004, and he provides no information on how the search of the

institution's records was conducted.  Second, defendants have not responded at all to plaintiff 's

assertion that not only did he submit an inmate grievance on February 12, 2004, but on March 1,

2004, he sent a letter to appeals coordinator Jackson inquiring about the status of that grievance.

Defendants merely rely on the conclusory declaration of M. Dangler in contending that there is

no record of an appeal filed by plaintiff in February 2004 and therefore administrative remedies

were never exhausted.

"While the absence of evidence that a grievance was officially filed may indicate

Plaintiff never submitted the grievance, it may also indicate that the grievance was discarded or

ignored by staff, as Plaintiff contends." Sanchez v. Stancliff, No. 1:07-cv-00128-LJO-SMS PC,

2009 WL 179777, at *4 (E.D. Cal. Jan. 23, 2009) (finding that when the issue is one of

credibility of witnesses, the assessment cannot be made  in ruling on a motion to dismiss).

Similarly, in this action, it is possible that the absence of a record of plaintiff's grievance

indicates that the grievance was discarded or ignored.  With no additional evidence to tip the

scales, the court finds that defendants have simply failed to satisfy their burden of proof on the

issue and will therefore recommend that the motion to dismiss be denied.  See also, Gibbons v.

Arpaio, No. CV 07-1456-PHX-SMM (JCG), 2008 WL 1927317, at *2 (D. Ariz. April 28, 2008)

(citing the decisions of district courts from other circuits and concluding, "In those cases, the

courts held that affidavits asserting that limited records were searched and no grievances found

were conclusory and insufficient to meet prison officials' burden when there was a dispute of fact

whether the grievance or appeal was filed."). [3]

/////

---

[3]  The court also notes that on May 23, 2004, plaintiff attempted to submit his grievance
as a citizen's complaint, complaining about the same matters that were presented in his February
12, 2004 grievance.  The May 23, 2004, grievance was rejected by prison officials as untimely
and duplicative of a grievance plaintiff  had filed on April 6, 2004 (log no. 04-00888).  However,
it appears to the court that plaintiff's May 23 and April 6 grievances did not present the same
same complaints.  This raises concerns regarding the proper processing of prisoner grievances at
the institution, as well as, whether the record keeping and tracking system with respect to those
grievances can be relied upon.

II. Factual Sufficiency of the February 12, 2004 Inmate Appeal

As noted above, defendants argue that if the court finds that plaintiff's February 12, 2004, appeal form was sufficient to exhaust his administrative remedies, that the court should find that only the claim brought against defendant Sloss-Peck in this action has been properly exhausted. Defendants argue that plaintiff's February 2004 grievance did not provide notice to defendants Dr. Salenger and Officer Anthony that plaintiff was complaining about their actions or their failure to act.

According to 15 C.C.R. § 3084.2, the appellant must use the CDC Form 602 "to describe the problem and action requested." 15 C.C.R. § 3084.2(a). The regulation provides no guidelines regarding the level of specificity required when describing the problem. The Ninth Circuit recently addressed "the standard of factual specificity required when a prison's grievance procedures do not specify the requisite level of detail." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). The court concluded that "[a] grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at 1120. See also Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002) (holding that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.").

Moreover the U.S. Supreme Court has rejected a "name-all-defendants" rule, holding that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Jones v. Bock, 549 U.S.199, 219 (2007) (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation.")). See also Gomez v. Winslow, 177 F. Supp. 2d 977, 978-82 (N.D. Cal. 2001) (rejecting the argument that the plaintiff had failed to exhaust his three distinct claims of

inadequate medical care and finding that all three claims were simply aspects of the inadequate

medical treatment plaintiff had notified corrections officials about in his administrative appeals).

Here, the court concludes that plaintiff's February 12, 2004 grievance was

sufficient to alert the prison that plaintiff was complaining about being given controlled

medication in an improper fashion upon his discharge, which he subsequently used in his

attempted suicide. Plaintiff allegedly was both discharged from the Treatment Center and

improperly provided the bottles of Prozac and Risperdal by prison staff on the same date and at

the same time. The alleged events are inextricably intertwined. There is no requirement that

plaintiff be more specific or that he name the particular individuals in his grievance that he later

names in his lawsuit.[4]

CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' December 2, 2008 motion to dismiss for failure to exhaust

administrative remedies (Doc. No. 66) be granted as to defendant Salenger, but denied as to

defendants Anthony and Sloss-Peck; and

2. Defendant Salenger be dismissed from this action.

/////

/////

---

[4] The court observes that plaintiff's filing of various citizen's complaints under
California Penal Code § 832.5, do not serve as a proper exhaustion of his administrative
remedies. The California Department of Corrections and Rehabilitation (CDCR) has established
an administrative grievance system, and a prisoner may not use a citizen's complaint to exhaust
administrative remedies when it is not part of that prescribed grievance process. See Evans v.
Woodford, No. 1:06-cv-01250 ALA (P), 2008 WL 5114653, at *2 (E.D. Cal. Dec. 4, 2008)
("citizen's complaint may not be used by a prisoner to comport with controlling law that requires
proper exhaustion: as defined here by the CDCR."); McCoy v. Schirmer, No. S-05-0165 DFL
DAD P, 2006 WL 845630, at *3 (E.D. Cal. March 30, 2006) ("The filing of a citizen's complaint
under California Penal Code § 832.5 does not serve the same purpose and in any event cannot
constitute exhaustion of available administrative remedies for California state prisoners since
state law provides an inmate appeal system specifically for prisoners.") However, defendants
have not moved to dismiss on grounds relating to plaintiff's filing of citizen's complaints.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 29, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
cott1107.fte