1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TREANDOUS A. COTTON,

11           Plaintiff,                      No. CIV S-06-1107 GEB DAD P

12        vs.

13   D.L. RUNNELS, et al.,              FINDINGS AND RECOMMENDATIONS

14           Defendants.

15   _____/

16           Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  This matter is before the court on a renewed motion for summary

18   judgment brought, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on behalf of

19   defendants Anthony and Sloss-Peck.  (Defs.' Mem. of P. & A. (Doc. No. 102-1); Defs.' Notice of

20   Renewal (Doc. No. 124.))  Plaintiff has filed an opposition to the motion.  (Doc. No. 127.)

21   Defendants have not filed a reply.

22           For the reasons set forth below, the court recommends that defendants' motion for

23   summary judgment be granted.

24                                  BACKGROUND

25           In his complaint plaintiff alleges as follows.  On January 26, 2004, plaintiff was

26   placed in the Correctional Treatment Center ("CTC") at High Desert State Prison ("HDSP"),

1

1   because he was suicidal and hearing voices.  While in the CTC plaintiff was prescribed Prozac

2   and Risperdal.  On February 2, 2004, plaintiff was discharged from the CTC despite still being

3   suicidal.  After he was escorted back to his housing unit, plaintiff was given two pill bottles

4   containing Prozac and Risperdal by an unidentified correctional officer, identified as John Doe in

5   plaintiff's complaint, in the presence of defendants Anthony and Sloss-Peck.[1]  Later that day,

6   plaintiff attempted suicide by overdosing on the medications given to him by the correctional

7   officer identified only as John Doe.  (Compl. (Doc. No. 1) at 4-5.)[2]  Nonetheless, plaintiff alleges

8   that defendants Anthony and Sloss-Peck were aware that plaintiff had been given the pill bottles

9   by the correctional officer and failed to confiscate them.  (Id. at 8.)  In this regard, plaintiff claims

10  that the named defendants acted with deliberate indifference to his serious medical need and

11  seeks compensatory and punitive damages against them.  (Id.)

12                                   PROCEDURAL HISTORY

13              On March 19, 2007, the court ordered the United States Marshal to serve

14  plaintiff's complaint on defendants Anthony and Sloss-Peck.[3]  (Doc. No. 7.)  On July 26, 2007,

15  defendant Sloss-Peck filed a motion to dismiss arguing that plaintiff's complaint failed to state a

16  claim for relief.  (Doc. No. 21.)  On October 2, 2007, defendant Anthony filed an answer to

17  plaintiff's complaint.  (Doc. No. 37.)  On February 19, 2008, the undersigned issued findings and

18  recommendations recommending that defendant Sloss-Peck's July 26, 2007 motion to dismiss be

19  denied but that the motion to dismiss as to defendants Jackson and Guzman be granted.  (Doc.

20  No. 44.)  On March 20, 2008, the assigned District Judge adopted those findings and

21

22        [1]  Although plaintiff named correctional officer "Peck" as a defendant in his complaint, it
    appears from defendants' pleadings that the defendant's correct name is "Sloss-Peck."

23

24        [2]  Page number citations such as this one are to the page number reflected on the court's
    CM/ECF system and not to page numbers assigned by the parties.

25        [3]  Plaintiff's complaint named several other defendants in addition to defendants Anthony
    and Sloss-Peck.  However those other defendants have been dismissed from this action and only

26  defendants Anthony and Sloss-Peck remain.

1   recommendations in full.  (Doc. No. 46.)  On March 26, 2008, defendant Sloss-Peck filed an

2   answer to plaintiff's complaint.  (Doc. No. 47.)

3         On April 16, 2008, plaintiff filed a notice of interlocutory appeal of the March 20,

4   2008 order.  (Doc. No. 49.)  On August 13, 2008, the Ninth Circuit dismissed plaintiff's appeal

5   for lack of jurisdiction because the order plaintiff was challenging was not final or appealable.

6   (Doc. No. 61.)  The August 13, 2008 judgment of the Ninth Circuit took effect September 24,

7   2008.  (Doc. No. 62.)  On October 23, 2008, the undersigned issued a scheduling order.  (Doc.

8   No. 64.)

9         On December 2, 2008, defendants Anthony and Sloss-Peck filed a motion to

10   dismiss arguing that plaintiff failed to exhaust his administrative remedies prior to filing this civil

11   action.  (Doc. No. 66.)  On April 29, 2009, the undersigned issued findings and recommendations

12   recommending that the December 2, 2008 motion to dismiss filed on behalf of defendants

13   Anthony and Sloss-Peck be denied.  (Doc. No. 94.)  Those findings and recommendations were

14   adopted in full by the assigned District Judge on June 8, 2009.  (Doc. No. 98.)

15         On July 31, 2009, counsel for defendants Anthony and Sloss-Peck filed a motion

16   for summary judgment, arguing that the defendants were entitled to entry of judgment in their

17   favor because: (1) there is no evidence that either defendant knew that plaintiff had been given

18   the pill bottles; (2) there is no evidence that either defendant committed an affirmative act to

19   violate plaintiff's constitutional rights; and (3) they are entitled to qualified immunity.  (Defs.'

20   Mem. of P. & A. (Doc. No. 102-1) at 2.)  On March 4, 2010, the undersigned denied defendants'

21   July 31, 2009 motion for summary judgment without prejudice to its renewal and granted

22   plaintiff ninety days to obtain an affidavit from his former cellmate.  (Doc. No. 120.)  Plaintiff

23   filed that affidavit from his former cellmate on June 7, 2010.  (Doc. No. 121.)  On October 19,

24   2010, defendants Anthony and Sloss-Peck renewed their July 31, 2009 motion for summary

25   judgment.  (Doc. No. 124.)  Plaintiff filed an opposition to defendants' motion for summary

26   judgment on January 5, 2011.  (Pl.'s Opp'n. to Defs.' Mot. for Summ. J. (Doc. No 127.))

1    SUMMARY JUDGMENT STANDARDS UNDER RULE 56

2           Summary judgment is appropriate when it is demonstrated that there exists "no

3    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4    matter of law."  Fed. R. Civ. P. 56(c).

5                        Under summary judgment practice, the moving party
                        always bears the initial responsibility of informing the district court
6                        of the basis for its motion, and identifying those portions of "the
                        pleadings, depositions, answers to interrogatories, and admissions
7                        on file, together with the affidavits, if any," which it believes
                        demonstrate the absence of a genuine issue of material fact.

8

9    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

10   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

11   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

12   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

13   after adequate time for discovery and upon motion, against a party who fails to make a showing

14   sufficient to establish the existence of an element essential to that party's case, and on which that

15   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

16   concerning an essential element of the nonmoving party's case necessarily renders all other facts

17   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

18   whatever is before the district court demonstrates that the standard for entry of summary

19   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

20          If the moving party meets its initial responsibility, the burden then shifts to the

21   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

22   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

23   establish the existence of this factual dispute, the opposing party may not rely upon the

24   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

25   form of affidavits, and/or admissible discovery material, in support of its contention that the

26   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

4

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6  1436 (9th Cir. 1987).

7          In the endeavor to establish the existence of a factual dispute, the opposing party

8  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13 committee's note on 1963 amendments).

14         In resolving the summary judgment motion, the court examines the pleadings,

15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26 /////

OTHER APPLICABLE LEGAL STANDARDS

I. <u>Civil Rights Act Pursuant to 42 U.S.C. § 1983</u>

The Civil Rights Act under which this action was filed provides as follows:

Every person who, under color of [state law] . . . subjects, or causes
to be subjected, any citizen of the United States . . . to the
deprivation of any rights, privileges, or immunities secured by the
Constitution . . . shall be liable to the party injured in an action at
law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  <u>See</u>

<u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362

(1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

omits to perform an act which he is legally required to do that causes the deprivation of which

complaint is made."  <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the

actions of their employees under a theory of <u>respondeat</u> <u>superior</u> and, therefore, when a named

defendant holds a supervisorial position, the causal link between him and the claimed

constitutional violation must be specifically alleged.  <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862

(9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

allegations concerning the involvement of official personnel in civil rights violations are not

sufficient.  <u>See</u> <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

II. <u>The Eighth Amendment and Inadequate Medical Care</u>

The unnecessary and wanton infliction of pain constitutes cruel and unusual

punishment prohibited by the Eighth Amendment.  <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986);

<u>Ingraham v. Wright</u>, 430 U.S. 651, 670 (1977); <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976).

In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove

that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

1  acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

2  Seiter, 501 U.S. 294, 298-99 (1991).

3        Where a prisoner's Eighth Amendment claims arise in the context of medical

4  care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

5  deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth

6  Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and

7  the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059

8  (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th

9  Cir. 1997) (en banc).

10        A medical need is serious "if the failure to treat the prisoner's condition could

11  result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

12  McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical

13  need include "the presence of a medical condition that significantly affects an individual's daily

14  activities."  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner

15  satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v.

16  Brennan, 511 U.S. 825, 834 (1994).

17        If a prisoner establishes the existence of a serious medical need, he must then

18  show that prison officials responded to the serious medical need with deliberate indifference.

19  Farmer, 511 U.S. at 834.  Deliberate indifference is "a state of mind more blameworthy than

20  negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or

21  safety.'"  Id. at 835.  Under the deliberate indifference standard, a person may be found liable for

22  denying adequate medical care if he "knows of and disregards an excessive risk to inmate health

23  and safety."  Id. at 837.  See also Estelle, 429 U.S. at 106; Lolli v. County of Orange, 351 F.3d

24  410, 418-19 (9th Cir. 2003); Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

25  /////

26  /////

7

1          DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

2  I.  Defendants' Statement of Undisputed Facts and Evidence

3          Defendants' statement of undisputed facts is supported by citations to declarations

4  signed under penalty of perjury by both defendants Anthony and Sloss-Peck and by D. Eidson,

5  the custodian of records for employee personnel files at HDSP.

6          The evidence submitted by the defendants establishes the following facts.

7  Plaintiff was confined at the CTC from January 26, 2004, to February 2, 2004, because he was

8  suicidal and hearing voices.  On February 2, 2004, plaintiff was returned to his housing unit and

9  was under suicide watch.  Defendant Sloss-Peck was not working at HDSP on February 2, 2004.

10  Defendant Anthony was working as a floor officer in plaintiff's housing unit on February 2,

11  2004.  Defendant Anthony was not an escorting officer on February 2, 2004.  (Defs.' SUMF

12  (Doc. No. 102-2) 2-3, 5-8.)[4]

13          HDSP's 2004 Operational Procedures for medication management provided that

14  when an inmate is discharged from the CTC, the CTC staff is to place the inmate's medications,

15  if any, in a sealed envelope and give the envelope to the inmate's escorting officer.  The escorting

16  officer then delivers the sealed envelope containing the inmate's medications to the receiving

17  clinic registered nurse or medical technical assistant at the inmates housing unit.  Medications are

18  not to be given to the inmate when the inmate is being returned to his housing unit from the CTC

19  and inmates are not allowed to keep medications while on suicide watch precaution.  (Defs.'

20  SUMF (Doc. No. 102-2) 9-11.)

21  II.  Defendants' Arguments

22          Defense counsel argues that the defendants Anthony and Sloss-Peck are entitled to

23  summary judgment in their favor with respect to plaintiff's Eighth Amendment inadequate

24  medical care claim because there is no evidence before the court indicating that they were

25

26          [4]  Citations to defendants' Statement of Undisputed Facts are to the specific numbered
material fact asserted.

8

1  deliberately indifferent to plaintiff's serious medical need.  In this regard, defense counsel argues

2  that the evidence before the court establishes that defendant Sloss-Peck was not even at HDSP on

3  February 2, 2004, and therefore could not have been present when plaintiff alleges that he was

4  given the pill bottles by the unnamed correctional officer.  With respect to defendant Anthony,

5  defense counsel argues that there is no evidence that Anthony was aware that an unidentified

6  officer gave plaintiff the pill bottles.  (Defs.' Mem. of P. & A (Doc. No. 102-1) at 5.)

7  III.  Plaintiff's Opposition

8          Plaintiff did not provide a reproduction of the facts enumerated in the defendants'

9  separate statement of undisputed facts.  Nor did plaintiff provide his own statement of undisputed

10  facts.  Moreover, plaintiff did not present any argument in support of his claim that defendants

11  Anthony and Sloss-Peck were deliberately indifferent to his serious medical need.  Instead,

12  plaintiff filed an opposition to the pending motion for summary judgment that merely reads as

13  follows:

14          Plaintiff is filing this motion to reaffirm plaintiff's position that his
        constitutional rights have been violated which this court had
15        previously ruled on during the initial screen out process.

16          Had [the], former attorney for defendants not hindered/obstructed
        plaintiff's discovery process plaintiff would be in a better position
17        of (sic) his case.

18          I [] humbly request that defendants motion for summary judgement
        be denied.

19

20  (Pl.'s Opp'n to Defs.'s Mot. for Summ. J. (Doc. No. 127) at 1.)

21          Plaintiff previously submitted a declaration signed under penalty of perjury from

22  his former cellmate, Christopher Burgess.  (Burgess Decl. (Doc. No. 121).)  Therein, inmate

23  Burgess declares that he and plaintiff were roommates at HDSP in 2003 and 2004.  (Id. at 2.)

24  Burgess state that he was aware that plaintiff had "psychological problems" and had been

25  escorted to the CTC on "a couple of occasions."  (Id.)  With respect to the events of February 2,

26  2004, Burgess declares that:

I recall [plaintiff] being provided two bottles of controlled psychotropic medications from a correctional officer upon being unhandcuffed and returning back from CTC due to suicidal fixations.

On 2-2-04, at some point after [plaintiff's] returning back from CTC I noticed [plaintiff] bending over and shaking next to the door then suddenly slumpped (sic) over and lost consciousness on the floor, which immediately prompted myself to get medical attention for [plaintiff].

At no time prior to this incident had I noticed [plaintiff] being in possession of any bottles of controlled medications of any kind because the medical personnel would bring [plaintiff] his medication to take at designated times in the day.

(Id.)

## ANALYSIS

Based on the evidence presented by the parties in connection with the pending motion for summary judgment, the undersigned finds that a reasonable juror could conclude that plaintiff's heightened risk of suicide constituted a serious medical need.  See Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010) ("[W]e have previously recognized that a heightened suicide risk can present a serious medical need."); Doty, 37 F.3d at 546 (deliberate indifference standard also applies to cases involving a prisoner's mental health care).  In this regard, plaintiff's suicidal ideation necessitated treatment with medication and his confinement in the CTC.  See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").  Moreover, according to a Medical Report of Injury that plaintiff attached to his complaint (Compl. (Doc. No. 1) at 18), plaintiff in fact attempted suicide by overdosing on Prozac and Risperdal on February 2, 2004.  See Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006) ("In prison suicide cases, the objective element is met by virtue of the suicide itself, as it goes without saying that suicide is a serious harm.") (citation and quotation marks omitted).

1         Accordingly, resolution of the pending motion hinges on whether, based upon the

2   evidence before the court on summary judgment, a rationale jury could conclude that the

3   defendants responded to plaintiff's serious medical need with deliberate indifference.  <u>Farmer</u>,

4   511 U.S. at 834; <u>Estelle</u>, 429 U.S. at 106.

5         With respect to defendant Sloss-Peck, the evidence before the court establishes

6   that defendant Sloss-Peck was not even working at HDSP on February 2, 2004, when plaintiff

7   alleges he was given the two pill bottles of medication used in his attempted suicide.  In this

8   regard, the custodian of records for HDSP has submitted a declaration signed under the penalty

9   of perjury declaring that there is no record of any entry by defendant Sloss-Peck in HDSP's

10  "Custody Sign In/Out Sheet" for February 2, 2004.  (Defs.' Ex. C, Eidson Decl. (Doc. No. 102-3)

11  at 9.)  According to the custodian of records, all correctional officers are required to sign the

12  "Custody Sign In/Out Sheet" when they enter HDSP and again when they leave.  (<u>Id.</u>)  Morever,

13  defendant Sloss-Peck has submitted a declaration signed under the penalty of perjury declaring

14  that he did not work at HDSP on February 2, 2004, the day plaintiff attempted suicide after

15  allegedly receiving psychotropic medications from another correctional officer.  (Defs.' Ex. B,

16  Sloss-Peck Decl. (Doc. No. 102-3) at 6.)  Defendant Sloss-Peck also declares that from January

17  to September of 2004, when he was assigned to work at HDSP, he was assigned to work only in

18  Facility D.  (Defs.' Ex. B, Sloss-Peck Decl. (Doc. No. 102-3) at 7.)  It is undisputed that

19  plaintiff's housing unit on February 2, 2004, was in Facility C.  (<u>Id.</u>)

20        With respect to defendant Anthony, the undisputed evidence before the court

21  establishes that defendant Anthony was working at HDSP on February 2, 2004, in plaintiff's

22  housing unit, when plaintiff was allegedly given the two bottles of medication used in his

23  attempted suicide.  In this regard, defendant Anthony has submitted a declaration signed under

24  the penalty of perjury declaring that he did work at HDSP, in housing unit C, on February 2,

25  2004.  (Defs.' Ex. A, Anthony Decl. (Doc. No. 102-3) at 3.)  However, defendant Anthony also

26  states that he has no knowledge of any correctional officer giving plaintiff medication on

1  February 2, 2004, and that had he observed any officer giving plaintiff medication he would have

2  taken possession of the medication and delivered it to medical personnel.  (Id. at 4.)

3           Based on this evidence, the court finds that the defendants have borne their initial

4  responsibility of demonstrating that there is no genuine issue of material fact with respect to the

5  adequacy of defendants' response to plaintiff's serious medical need.  While it is undisputed that

6  plaintiff overdosed on Prozac and Risperdal on February 2, 2004, defendants evidence indicates

7  that neither defendant Sloss-Peck nor defendant Anthony was aware that plaintiff was in

8  possession of Prozac or Risperdal prior to his attempted suicide.

9           Accordingly, the burden shifts to plaintiff to establish the existence of a genuine

10  issue of material fact with respect to his claim that the defendants demonstrated deliberate

11  indifference to his serious medical need.  As noted above, to demonstrate a genuine issue, the

12  opposing party "must do more than simply show that there is some metaphysical doubt as to the

13  material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to

14  find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587

15  (citation omitted).

16           The court has considered plaintiff's opposition to the pending motion for

17  summary judgement, the declaration submitted by plaintiff's cellmate in support of that

18  opposition, and plaintiff's verified complaint.  In considering defendants' motion for summary

19  judgment, the court is required to believe plaintiff's evidence and draw all reasonable inferences

20  from the facts before the court in plaintiff's favor.  Drawing all reasonable inferences in

21  plaintiff's favor, the court concludes that plaintiff has not submitted sufficient evidence to create

22  a genuine issue of material fact with respect to his claim that defendants Anthony and Sloss-Peck

23  responded to his serious medical need with deliberate indifference.  See Farmer, 511 U.S. at 834;

24  Estelle, 429 U.S. at 106.

25           Specifically, plaintiff has tendered no competent evidence demonstrating that

26  either defendant Anthony or defendant Sloss-Peck was aware that plaintiff had been given

12

bottles containing psychotropic medications prior to plaintiff's attempted suicide.  See Thomas v.

Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) ("Deliberate indifference requires a showing that

'prison officials were aware of a 'substantial risk of serious harm' to a prisoner's health or safety

and that there was no 'reasonable justification for the deprivation, in spite of that risk.'")

(quoting Farmer, 511 U.S. at 837, 844); Collins, 462 F.3d at 761 ("Where the harm at issue is a

suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim

requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial

risk of committing suicide and (2) intentionally disregarded the risk."); Jeffers, 267 F.3d at 913

("Deliberate indifference requires that an official 'both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference.'") (quoting Farmer, 511 U.S. at 837).

        In this regard, plaintiff has offered the declaration of his former cellmate,

Christopher Burgess.  However, in his declaration Burgess states only that on the day in question

he recalls plaintiff being returned to the unit in handcuffs from CTC and provided two bottles of

"controlled psychotropic medications" from an unidentified correctional officer.  (Doc. No. 121.)

Burgess states that normally medical personnel would bring plaintiff his dosage of medications

only when they were to be taken.  (Id.)  In his declaration, Burgess does not state that either

defendant Anthony or defendant Sloss-Peck was present when the unidentified correctional

officer gave the two bottles to plaintiff.  In fact, Burgess does not identify any other correctional

officer being present when plaintiff allegedly received the two bottles.[5]  The unidentified officer

who Burgess states provided the medication bottles to plaintiff would appear to be the

correctional officer identified by plaintiff in his complaint as "John Doe."  Thus, the Burgess

declaration does not establish the existence of a disputed issue of material fact precluding

summary judgment in favor of the moving defendants.

_____

        [5]  Burgess does not state in his declaration how he knows that the two pill bottles
contained psychotropic medication.

1    That leaves only plaintiff's own allegations set out in his verified complaint.

2    There, plaintiff alleges in conclusory and somewhat vague fashion that he "was given (2) bottles

3    of controlled drugs (Prozac & Rispiridal [sic]) by the unidentified officer (John Doe) in the

4    presense [sic] officer Anthony and officer Peck was also aware of this."  (Compl. (Doc. No. 1) at

5    5.)  As noted above, it is indisputable based upon the evidence submitted by the defendants that

6    defendant Sloss-Peck was not even working at HDSP on the day plaintiff alleges he was given

7    the two pill bottles and attempted suicide.  In his complaint plaintiff does not allege how

8    defendant Sloss-Peck was at all "aware" of the events of that day, let alone of a substantial risk

9    that plaintiff would attempt suicide on the day in question.  Similarly, plaintiff alleges that

10   defendant Anthony was present when plaintiff was given the pill bottles by the correctional

11   officer identified as "John Doe."  Even if this bare allegation is credited (despite the fact that it is

12   inconsistent with the declarations of defendant Anthony and the declaration of inmate Burgess

13   submitted by plaintiff himself) plaintiff does not allege that defendant Anthony, based upon his

14   mere presence, was aware of substantial risk that plaintiff would attempt suicide.

15   As observed at the outset above, summary judgment should be entered, after

16   adequate time for discovery and upon motion, against a party who fails to make a showing

17   sufficient to establish the existence of an element essential to that party's case, and on which that

18   party will bear the burden of proof at trial.  See Celotex Corp., 477 U.S. at 322; see also Addisu

19   v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is

20   merely colorable . . . does not present a genuine issue of material fact" but rather there "must be

21   enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary

22   judgment motion.")  The moving defendants have satisfied their initial burden of coming forward

23   with evidence  demonstrating the absence of a genuine issue of material fact with respect to the

24   claims against them.  Here, plaintiff has failed to respond with any proof from which a

25   reasonable trier of fact could find in his favor with respect to his claims against defendants

26   Anthony and Sloss-Peck.   See Scott v. Harris, 550 U.S. 372, 380 (2007) (Where the party

14

1   opposing summary judgment presents a version of the facts that is blatantly contradicted by the

2   record "so that no reasonable jury could believe it, a court should not adopt that version of the

3   facts for purposes of ruling on a motion for summary judgment."); see also Hansen v. United

4   States, 7 F. 3d 137, 138 (9th Cir. 1993) ("When the non-moving party relies on its own affidavits

5   to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual

6   data to create an issue of material fact.")

7         Therefore, the court concludes that the moving defendants are entitled to summary

8   judgment in their favor on plaintiff's claim that they were deliberately indifferent to plaintiff's

9   serious medical need in violation of plaintiff's rights under the Eighth Amendment.[6]

10                            CONCLUSION

11        Accordingly, IT IS HEREBY RECOMMENDED that:

12        1.  Defendants Anthony and Sloss-Peck's July 31, 2009 motion for summary

13   judgment (Doc. No. 102), as renewed by defendant's October 19, 2010 notice of renewal of

14   motion for summary judgment (Doc. No. 124), be granted; and

15        2.  This action be closed.

16        These findings and recommendations are submitted to the United States District

17   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

18   one days after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21   shall be served and filed within fourteen days after service of the objections.  The parties are

22   /////

23   /////

24   _____

25        [6] In the pending motion for summary judgment, defense counsel has also argued that defendants Anthony and Sloss-Peck are entitled to summary judgment in their favor based upon qualified immunity.  In light of the recommendation set forth herein, the court need not address

26   defendants' qualified immunity argument.

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: July 11, 2011.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE
7   DAD:6
    prisoner-civilrights.cotton1107.sj
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26